## ALM et al. v. AMERICAN HAIR & FELT CO.

No. 6129.

Circuit Court of Appeals, Seventh Circuit.

June 30, 1937.

Malcolm Mecartney, of Chicago, Ill. (James J. Kilgallon, of Chicago, Ill., of counsel), for appellants.

Louis Quarles, of Milwaukee, Wis., Albert L. Hopkins, of Chicago, Ill., James T. Guy, of Milwaukee, Wis., and Donald J. DeWolfe, of Chicago, Ill. (Lines, Spooner & Quarles, of Milwaukee, Wis., and Hopkins, Sutter, Halls & DeWolfe, of Chicago, Ill., of counsel), for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

This appeal is from a decree in equity in which the District Court, exercising its discretion, declined jurisdiction of the action and dismissed it without prejudice.

On July 29, 1936, appellee and its subsidiaries were engaged in buying from tanneries and selling animal hair, and in making and selling products in which such hair was used, both, in interstate and intrastate commerce.

Appellants, who were holders of appellee's common stock, instituted the action for themselves and others similarly situated. By the bill, which was amended on August 14, 1936, appellants sought to enjoin appellee, a Delaware corporation, from redeeming its common stock and immediately issuing it to others who were common stockholders, patrons, officers, directors or employees of appellee, or other persons who were affiliated with appellee's industry. Appellee, by resolution of July 23, 1936, had declared its intention of doing the acts complained of on October 1, 1936. The challenged plan was to distribute all of the common stock to tanning stockholders proportionately to the quantities of hair sold to appellee by such respective tanners; that the officers, directors and employees of appellee were to be permitted to continue to hold the same amount of common stock they then held, and to acquire additional stock if not taken by the tanners, but all common stock held by such officers, directors and employees was to be held under an option to appellee to repurchase at the price at which it might be called.

The amended original bill set forth various provisions of the Delaware Corporation Code, and disclosed that appellee had taken all steps for the call and purchase of its common stock in compliance with its charter. Much of the bill which is quite voluminous, is not material to the question here presented, and need not be referred to other than in a general way. It averred that the business was first established in Chicago in 1864, and incorporated in Illinois in 1885; that in 1918 it was dissolved and reincorporated under the laws of Delaware under the name of the Tanners Products Company, and in 1928 its present name was adopted. It was further averred that appellants were informed and believed that appellee was incorporated under the laws of Delaware as a mere matter of convenience and with the intention of carrying on its business from its principal office in Chicago, where it had always been located; that it was authorized to do business in Illinois, and, either directly or through its subsidiaries, then maintained factories in many large cities of the United States, including Chicago and Wilmington, Delaware, and owned fifty-five per cent of the capital stock of the Dominion Hair Felt Company, Ltd., which then had a factory in St. Johns, Quebec.

It was also averred that pursuant to appellee's by-laws all meetings of its board of directors and stockholders were held in Chicago, where its main books and records were kept; that all of its officers had their offices in Chicago and resided within the jurisdiction of the District Court which issued the challenged decree; that of the twenty-one directors, nine resided in Chicago, four in Wisconsin, three in Massachusetts, two in New York, and one each in New Jersey and

Ohio. The company's registered office was in Wilmington, Delaware. More than 150 of the common stockholders resided in Illinois, 140 of whom were in the jurisdiction of the District Court here concerned, and owned 25,000 shares of common stock. In no other state did fifty stockholders reside. Only three resided in Delaware and they owned less than four hundred shares.

On July 1, 1935, a reorganization of the company's capital structure was effected which resulted in the issuance of first preferred stock, second preferred stock, and an authorized issue of 200,000 shares of common stock of no par value, of which 160,354 shares were outstanding, and 300 shares were held in the company's treasury. Of the outstanding shares appellants owned 625, which they had purchased in "over the counter trading" between August 1935, and May 1936, at prices ranging from $5 to $9.73 per share, and that at the time the bill was filed such stock had a value greatly in excess of $5 per share.

By the provisions of its charter[1] the common stock and the first preferred stock were callable. The second preferred stock was not callable, but upon call of the common stock the second preferred stock was to become vested with all voting rights, and the rights to the residue of the assets upon liquidation of the corporation.

It was also alleged in the bill that appellee's attempted action to redeem its outstanding common stock and to reissue it to tanning stockholders constituted a threatened violation of the Federal Anti-Trust Laws, chapter 1 of Title 15 of the United States Code (15 U.S.C.A. § 1 et seq.) ; and would also be violative of an injunctive decree heretofore entered by the District Court on October 3, 1927, in an equity action brought by the United States of America against Tanners Products Company, which by reference was made a part of the bill, and which we shall discuss later.

Appellee, on August 12, 1936, entered its special appearance and filed a motion to dismiss the bill on the ground that the threatened acts concerned only those matters which affected the internal management of a foreign corporation. On August 14, 1936, the parties stipulated and agreed in open court "that the defendant might file its answer to the amended bill * * * and that the filing of such answer * * * should not be construed as constituting a general appearance * * * nor as waiving the special appearance theretofore filed, nor as waiving the motion to dismiss * * *." Thereupon, on August 24, 1936, appellee filed its answer to the amended bill incorporating by exhibits appellee's certificate of incorporation and by-laws; a form of the common

[1] "The Common Stock shall be subject to call and redemption as an entirety on 60 days' notice at the option of the corporation on the first days of January, April, July and October of any year at its book value for liquidation. But in no event shall the call price be less than $5.00 per share nor more than $100 per share. Whenever the call or redemption of Common Stock shall result in causing any default in any of the provisions relating to the rights of or restrictions upon the First Preferred Stock and/or Second Preferred Stock, such Common Stock shall not be called for redemption unless it shall be immediately reissued at not less than the redemption price thereof or unless the consent of three-fourths in amount of the First and/or Second Preferred Stock shall have been obtained as provided in sub-paragraphs 11 and 12 hereof.

"In event of any liquidation whether voluntary or involuntary or dissolution or winding up of the corporation and distribution of any corporate assets other than profits before any amount shall be paid to the holders of Second Preferred Stock or to the holders of Common Stock, the holders of First Preferred Stock shall be

entitled to be paid in full the par value of their shares together with all dividends accrued and unpaid; but they shall not be entitled to any further or other participation in the distribution of assets and/or profits.

"In event of any liquidation whether voluntary or involuntary or dissolution or winding up of the corporation and the distribution of any corporate assets other than profits after all the provisions as to First Preferred Stock shall have been complied with, the remaining assets shall be distributed among the holders of Second Preferred and Common Stock in the following order of priority, to-wit:

"(a) The holders of Second Preferred Stock shall be entitled to be paid $100 per share for each share of stock held by them and all dividends accrued and unpaid;

"(b) The holders of Common Stock, if any of the same be then outstanding, shall be entitled to receive all of the remaining assets of the corporation and if there be no Common Stock then outstanding the holders of Second Preferred Stock shall be entitled to receive such assets."

stock certificate; section 28 of the Delaware Corporation Code (Rev.Code Del.1935, § 2060), which related to the reduction of capital; the form of notice given to stockholders, to the public, and to those selling appellee's stock in excess of the call price, of the call provisions in the charter; appellee's balance sheet of July 30, 1936; and the notice given to the common stockholders of the proposed redemption of the common stock, dated July 30, 1936. The answer repeated appellee's motion to dismiss and the reasons theretofore given, and admitted practically all of the material allegations of the bill with the following exceptions: It denied that the incorporation under the Delaware laws was a mere matter of convenience, and alleged that appellee did business in many states, and had manufacturing plants outside Illinois, and that its largest plants were in New Jersey and Wisconsin; that it had operated a factory in Delaware since 1890, and that its home office and its

required corporate records were in that state; that more than 83 per cent of its manufacturing was done outside Illinois; that less than 14 per cent of its sales represented materials shipped from Illinois plants; that of its outstanding common stock only 29,167 shares were held by Illinois residents; and that more than 80 per cent of its common stock was held by 226 stockholders who lived in nineteen states other than Illinois, or in a foreign country.

The answer set forth the applicable provisions of subsection (17) of article IV and subsections (5) and (6) of article VIII of appellee's Certificate of Incorporation.[2] It also set forth the applicable provisions of sections 5, 13 and 19 of the Delaware Corporation Code, and also a portion of section 27 of that Code which was omitted from the bill.[3]

On the day of submission appellants by leave of court struck from their amended

[2] Article IV. "(17) The holders of common stock shall have no pre-emptive rights whatever and no holder of common stock shall be entitled to subscribe for, purchase or receive as a matter of right because of his ownership of common stock any part of the * * * common capital stock of this corporation at any time issued * * * and the said common stock shall be issuable solely at the discretion of the Board of Directors."

Article VIII. "(5) The directors shall have the right to dispose of any unissued common stock at any price not less than its declared value, to any person, firm or corporation, without first offering such stock to the stockholders of the corporation or in any way consulting stockholders and without action by the stockholders, except when stockholders' action is required to increase authorized capital stock."

Article VIII. "(6) The price at which any new issue of common or second preferred stock, whether from unissued stock or newly authorized stock, shall be acquired by anyone, shall be such price not less than the declared value as the directors may determine."

[3] Section 5: "The Certificate of Incorporation may also contain any provision which the incorporators may choose to insert for the management of the business and for the conduct of the affairs of the corporation, and any provisions creating, defining, limiting and regulating the powers of the corporation, the directors and the stockholders, or any class of the stockholders, or, in the case of a corporation which is to have no capital stock, of

the members of such corporation; provided, such provisions are not contrary to the laws of this State." Rev.Code Del. 1935, § 2037(8).

Section 13: "Every corporation shall have power to issue one or more classes of stock * * * with such designations, preferences and relative, participating, optional or other special rights, and qualifications, limitations or restrictions thereof, as shall be stated and expressed in the Certificate of Incorporation or of any amendment thereto. * * * The power to increase or decrease or otherwise adjust the capital stock as in this Chapter elsewhere provided shall apply to all or any such classes of stock." Rev. Code Del.1935, § 2045.

Section 19: "Every Corporation organized under this Chapter shall have the power to purchase, hold, sell and transfer shares of its own capital stock; provided that no such corporation shall use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of the capital of the corporation; and provided further that shares of its own capital stock belonging to the corporation shall not be voted upon directly or indirectly; and provided, further, that nothing in this Section shall be construed as limiting the exercise of the rights given by Section 27 of this Chapter." Rev. Code Del.1935, § 2051.

Section 27: "Nothing in this Section shall be construed as limiting the exercise of the rights given by Section 19 of this Chapter, or as in any way affecting the right of any corporation to resell any

**358**

complaint sections 13 and 27 of chapter 65 of the Delaware Corporation Code (Rev. Code Del.1935, §§ 2045, 2059), under which chapter appellee was organized, and which prescribes the classes of stock, preferred or special, which may be redeemed, and the terms and conditions of such redemption. At the same time, by leave of court they also struck section 28 of that chapter (Rev.Code Del.1935, § 2060), pursuant to which appellee's resolutions were passed. The cause was then submitted to the court without objections, and no request was made by appellants, or any one, for the introduction of evidence on any issue raised by the bill and answer or motion.

While appellants contend that the proposed redemption and reissue of common stock would be in violation of the Federal Anti-Trust Laws, they have not indicated what part or parts of that law would be violated thereby. However, it is fair to assume that they base this contention upon the further allegation that the threatened actions would be violative of the injunctive decree, hereinbefore referred to, which held that the acts therein involved were in violation of the Federal Anti-Trust Laws.

That action terminated in a consent decree. At and prior to that time appellee had in force what was known as a "contributing stockholder plan," under which its stockholders, who were tanning companies producing cattle and calf hair, were practically forced to sell their entire output of hair to appellee. Failure to do so caused the forfeiture of what was called the "added price" which was the greater part of the purchase price, and thus gave appellee control of the hair supplied. The decree in effect held that provision invalid as violative of the Federal Anti-Trust Laws and exercise of its provisions was enjoined. However, the decree also provided that nothing should prevent the principal defendants from purchasing hair from the secondary defendants, or nonstockholders on yearly contract or otherwise, or in any manner which should not include any distribution of profits to the vendors by way of added price, or whereby the vendors should retain any interest, direct or indirect, in hair so sold, after the sale and delivery thereof to the principal defendants.

The record does not disclose that that decree has ever been violated, or that it will be violated by the redemption and reissue of the common stock, as provided. Indeed, the record discloses that the injunctive decree will not be violated in any manner by the proposed call and reissue of the common stock. Even the petition standing alone does not properly disclose such an issue. No basis for a different conclusion has been suggested to us, nor have we been able to discover one.

■ We are convinced that the controlling issue, and in fact the only issue, here presented must turn upon whether the acts complained of concerned only the management and internal affairs of appellee, a foreign corporation. That question must be answered in the affirmative.

Appellants, however, contend that only the verified factual allegations of the bill must be considered in determining that question, and can not be aided by the verified allegations of the answer. This contention can not prevail under the ruling in McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135. However, the factual allegations of the bill alone, aside from its mere conclusions, would require an affirmative answer to the question. Babcock v. Farwell, 245 Ill. 14, 91 N.E. 683, 137 Am.St.Rep. 284, 19 Ann.Cas. 74; North State Copper & Gold Mining Co. v. Field, 64 Md. 151, 20 A. 1039.

Under such a state of facts the determination of whether the District Court should have taken jurisdiction was within that court's sound discretion. Rogers v. Guaranty Trust Co., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720. We think that discretion was not abused in this case.

Decree affirmed.

---

of its shares theretofore purchased or redeemed out of surplus for such consideration as shall be fixed from time to time by the board of directors." Rev. Code Del.1935, § 2059.